# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 10, 2006

## TIMOTHY THOMAS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 2002-B-839, 2002-B-840, 2002-B-915     J. Randall Wyatt, Jr., Judge**

---

**No. M2005-01660-CCA-R3-PC - Filed July 17, 2006**

---

The petitioner, Timothy Thomas, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance for failing to adequately investigate the case or explain the ramifications of the plea agreement and that his guilty pleas were consequently unknowing and involuntary. Following our review, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Matthew Mayo, Nashville, Tennessee, for the appellant, Timothy Thomas.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On April 13, 2004, the petitioner pled guilty in Case No. 2002-B-839 to aggravated robbery and in Case No. 2002-B-840 to especially aggravated kidnapping, attempted aggravated robbery, and felony possession of a weapon, for which he received an effective sentence of twenty years to be served at 100%. That same day, he pled guilty in Case No. 2002-B-915 to reckless aggravated assault and was sentenced as a Range I, standard offender to two years to be served consecutively to Case No. 2002-B-840.

The facts surrounding the petitioner's offenses were set out by the State at the guilty plea hearing:

On 2002-B-840, if the state's case had gone to trial, witnesses would be available and testify that the victim in this case, Ms. Barbara Peterson, on February the 10th of 2002, about 7:30, in the morning, she was letting her dogs out, when she was confronted by the [petitioner] who was armed with a handgun and demanded money. He forced her back into her house, where the victim indicated she only had seven dollars. The [petitioner] did not take the seven dollars, but forced Ms. Peterson out to the front of her house, to her car, with her purse, in an effort to go to an ATM to take money out of the ATM. When they arrived at the car, Ms. Peterson decided she would not go, fearing her own safety. She refused. At that point, [the petitioner] struck her and fled the scene.

. . . .

On 2002-B-839, had that case gone to trial, witnesses would be available and testified [sic] on February the 17th, the victim in this case, Mr. John Garrett, was in his house when the [petitioner] knocked on his door and asked to see someone that Mr. Garrett did not know. At that point, the [petitioner] forced his way into Mr. Garrett's residence, armed with a handgun and demanded his money. He took around two hundred dollars. At that point, Mr. Garrett struggled with the [petitioner]. The [petitioner] fled the scene. Mr. Garrett was able to locate a nearby traffic officer who pursued the [petitioner], and subsequently, took him into custody. . . .

And finally, on 2002-B-915, if that case had gone to trial, the proof would be that on February the 18th of 2002, [the petitioner] was an inmate at the Criminal Justice Center. He assaulted the victim in that case, Shawn Susan, who was a deputy, with a metal object, causing a wound requiring stitches in his head. He, then, took Mr. Susan's employee access card and attempted to escape the facility. He was, later, located in the Criminal Justice Center, hiding in a ceiling area.

The petitioner filed a *pro se* petition for post-conviction relief on October 18, 2004, followed by an amended petition on April 14, 2005, after the appointment of post-conviction counsel. In the original and amended petitions, the petitioner claimed that he was denied the effective assistance of trial counsel and that his guilty pleas were unknowingly, unintelligently, and involuntarily entered as a result of counsel's deficiencies in representation. Specifically, he asserted that trial counsel failed to properly investigate the crimes, failed to confer with the petitioner prior to trial, and failed to adequately explain the consequences of pleading guilty.

At the April 25, 2005, evidentiary hearing, trial counsel testified that he had been employed by the Metro Public Defender's Office for "[a] little less than three years" and that another public defender was originally appointed to represent the petitioner. Trial counsel said he became involved in the petitioner's case about five or six months before trial and worked with co-counsel "pretty much fifty fifty." He and co-counsel "prepped everything together, investigated the case together,

prepared together for trial [and] [p]repared all the legal motions together" and had an investigator assigned to the petitioner's case. Trial counsel said they presented an alibi witness, Shamar Sherrell, and retained an expert witness who the trial court, after a lengthy hearing, ruled could not testify. Trial counsel said he discussed defense strategy with the petitioner, and they "ended up using an identification defense." Counsel explained that the victim in Case No. 2002-B-840 had identified the petitioner, but the "bigger problem" they faced was the petitioner's statement to the police where he said "something along the lines of I didn't kidnap that woman, but I had a gun." Counsel said that the petitioner's trial lasted three or four days and ended in a hung jury.

Trial counsel said that before the petitioner entered into the plea agreement, co-counsel left the public defender's office and trial counsel took over the petitioner's case. Subsequently, a third public defender became involved in the petitioner's case. Trial counsel denied that the petitioner gave him any information that he dismissed without investigating. Trial counsel said he visited the petitioner "a lot while he was in jail," and second co-counsel was present when the petitioner decided to accept the plea offer. Trial counsel said he read the plea petition to the petitioner, and they discussed it as he read it. Asked if he had been prepared to try the petitioner's case a second time, trial counsel responded, "Yes. I mean we tried it once and had a good result."

Trial counsel recalled that the State had originally offered the petitioner forty-two years and then, after the first trial ended in a hung jury, offered "something in the 30's." As the second trial date approached, the State offered twenty years at 100% on the especially aggravated kidnapping and two years at 30% on the reckless aggravated assault. Counsel said the petitioner had not wanted to plead guilty until he got the twenty-year offer, and he believed the petitioner "knew what he was doing" in pleading guilty. Asked if he discussed with the petitioner that the sentence for the especially aggravated kidnapping would be served at 100%, counsel said, "That is something we definitely discussed. I believe he understood that. I mean it's something we talked about a lot." Trial counsel also said that the petitioner had cases pending in Mississippi which the district attorney's office in that state was willing to either dismiss or give the petitioner concurrent time if the petitioner accepted the plea offer.

The petitioner testified that trial counsel became his lead attorney after the first trial and that he met with counsel four or five times before he entered his guilty pleas. He acknowledged that he received a twenty-two-year sentence and that twenty years had to be served at 100% but said he did not understand that at the time of his guilty pleas. The petitioner said trial counsel explained the 100% service to him but "didn't explain it to a T that I knew that it was a hundred percent on the kidnapping. . . . I didn't even know it was a hundred percent on none of it. I thought it was going to be at 30." However, the petitioner acknowledged that the trial court, at the guilty plea hearing, had informed him that his sentence would be at 100%. The petitioner said it was his intention to have another jury trial because he felt he had sufficient evidence to prove his innocence.

The petitioner said he gave trial counsel information that could have aided his case, but counsel did not adequately use the information. He explained that his statement to the police was not part of the discovery but acknowledged that trial counsel provided him a copy of the statement

at the end of the trial. He said the information on the statement "couldn't even match up to what the case was even about," explaining that the time of the crime and the time he gave his statement did not match. He acknowledged that his attorneys had challenged the statement in the first trial but said he told them they needed "to push the issue more."

The petitioner said he pled guilty because first co-counsel had taken himself off the case and trial counsel did not have "enough time to set up a defense." He said he only accepted the plea offer because he did not understand the percentage of the time and did not believe he was going to have a fair trial. Asked if he felt that trial counsel had adequately investigated his case, the petitioner said, "No, sir. . . . Because if he had done all that, due to what I done did my investigation on it myself, on my case, on discovery and stuff and all the . . . efforts in the case, I don't believe he would have let me go on and take a plea." He acknowledged that trial counsel read the guilty plea petition to him and said he eventually accepted the offer "[b]ecause they kept telling if they find me guilty I can get the 42." He acknowledged that his Mississippi cases had been dismissed as part of his plea agreement. He denied that trial counsel ever told him his sentences would be at 100% but acknowledged that the prosecutor and the trial court had informed him of the 100% service at the guilty plea hearing.

On May 16, 2005, the post-conviction court entered a detailed written order denying the petition for post-conviction relief on the basis that the petitioner had failed to meet his burden of demonstrating either ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Among other things, the court found:

> Based on the evidence presented at the hearing, the Court is of the opinion that [trial counsel] represented the Petitioner in a competent and thorough manner. The Court does not find sufficient evidence to support the Petitioner's claim of ineffective assistance of counsel. The Court is of the opinion that [trial counsel] properly investigated all three of the cases pending against the Petitioner, evaluated the strengths and weaknesses of the State's cases against the Petitioner, explained the criminal exposure under all three indictments, and counseled the Petitioner about the pros and cons of accepting the plea. The Court is of the opinion that [trial counsel] thoroughly explained to the Petitioner that the sentence he was receiving for pleading guilty to Especially Aggravated Kidnapping was twenty years, and that he was going to serve one hundred percent of the twenty year sentence. The Court is of the opinion that [trial counsel] competently counseled the Petitioner so that he was able to enter into the plea agreement knowingly, voluntarily, and intelligently.

## ANALYSIS

On appeal, the petitioner raises the interrelated issues of whether the post-conviction court erred in finding he received effective assistance of trial counsel and that his guilty pleas were knowing and voluntary. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an

evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them.  See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).  Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997).  However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de* novo, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial.  Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

In support of his ineffective assistance of counsel claim, the petitioner argues that trial counsel failed to properly investigate his case and was unprepared for trial.  The post-conviction court, however, specifically accredited the testimony of trial counsel over that of the petitioner. Trial counsel testified that he was prepared to try the petitioner's case a second time, explaining, "[W]e

tried it once and had a good result." He denied that the petitioner had given him any information that he dismissed without investigating. The post-conviction court found that trial counsel properly investigated all three of the cases against the petitioner and "zealously pursued the defense requested by the petitioner." We conclude that the record supports the post-conviction court's finding that counsel provided effective representation.

In an interrelated claim, the petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. Specifically, he asserts that he was "not advised of the probable outcome of his decision to plead guilty." The State argues that the evidence supports the post-conviction court's finding that the petitioner freely, voluntarily, and knowingly entered his pleas. We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Trial counsel's testimony, accredited by the post-conviction court, established that the petitioner was fully informed of the consequences of his pleas, including that his twenty-year sentence would be served at 100%. Trial counsel testified that he went over the plea agreement with the petitioner and that the petitioner "knew what he was doing" in pleading guilty. Trial counsel further testified that he "definitely discussed" with the petitioner that the sentence for the especially aggravated kidnapping would be served at 100%. The transcript of the guilty plea hearing reflects that the petitioner acknowledged he understood what he was doing in pleading guilty. The post-conviction court found that trial counsel had "thoroughly explained" the twenty-year sentence at 100% to the petitioner and that counsel had "competently counseled the [p]etitioner so that he was

able to enter into the plea agreement knowingly, voluntarily, and intelligently." We conclude that the record supports the post-conviction court's finding that the petitioner failed to show that his guilty pleas were unknowing and involuntary.

## CONCLUSION

Having reviewed the record, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE